# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTHSTAR FINANCIAL COMPANIES, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 11-5151 |
| | : | |
| JAMES J. NOCERINO and HORIZON FINANCIAL NETWORK, LLC., | : | |
| Defendants. | : | |

Goldberg, J.                                                                                           November 15, 2013

## MEMORANDUM OPINION

The dispute between the parties, Plaintiff Northstar Financial Companies, Inc. and Defendants James J. Nocerino and Horizon Financial Network, LLC, centers around an asset purchase and employment agreement. Unfortunately, rather than litigate this case on the merits, Defendants have chosen to engage in obstructionist discovery practices that have persisted since 2011 when Plaintiff filed its complaint.

Before the Court is Plaintiff's motion for sanctions and request that a default judgment be entered against Defendants. Because we conclude that Defendants' discovery violations have been egregious and in bad faith, we will grant Plaintiff's motion and enter a default judgment on Plaintiff's behalf and against Defendants.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a financial services company. Through an asset purchase agreement dated January 15, 2010, Plaintiff purchased Horizon, also a financial services company, which was owned by Defendant Nocerino. Plaintiff and Nocerino also entered into an employment

1

agreement whereby Nocerino was to work for Plaintiff. Under the asset purchase agreement and employment agreement, Plaintiff was assigned the right to all future revenue earned from the client-related assets acquired from the acquisition of Horizon. The central issue in this case pertains to Nocerino's obligation to turn over the revenue he received after the purchase agreement, and Plaintiffs allegations that he refused to do so.

On July 5, 2011, Plaintiff initiated this action against Defendants, Nocerino and Horizon, in state court and thereafter, on August 12, 2011, Defendants removed the case to this Court, invoking diversity jurisdiction. Attorneys Joseph Vaughn and Joseph Freeth[1] signed the Notice of Removal and were listed on the docket as attorneys of record for the Defendants. (See Notice of Removal; ECF docket.)

The ongoing discovery disputes between the parties, which culminated in the instant motion, began in late 2011.[2] While recapping the discovery history is cumbersome, we do so in order to demonstrate why we have concluded default is appropriate.

## II.     DISCOVERY VIOLATIONS

On or about October 28, 2011, shortly after the complaint was filed, Defendants were served with Plaintiff's First Set of Requests for Interrogatories and Plaintiff's First Set of Requests for Documents. Pursuant to Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A), answers to this discovery were due on November 28, 2011.

---

[1] Joseph Freeth is not admitted to this Court and did not file for pro hac vice admission at the time he signed the Notice of Removal.

[2] On May 30, 2012, Plaintiff filed correspondence with this Court renewing its previously filed motion for sanctions (Doc. No. 48), which we will construe as a motion for sanctions (hereinafter, "Second Motion for Sanctions"). Plaintiff has also filed a "Motion to Strike Defendants' Response in Opposition to Plaintiff's Motion for Sanctions and to Treat Motion for Sanctions as Uncontested.").

On December 2, 2011, after the thirty-day response deadline had passed, Defendants served their responses, which were entirely inadequate. For instance, in a discovery request that was central to the dispute, Plaintiff's interrogatory no. 3 requested the identification of all revenue earned from the sale of financial products or the rendering of financial services since May 1, 2011—including the name of the client, account and/or policy that generated the revenue. Defendants' answer was devoid of any written response and only included attached commission statements without explaining which specific documents were responsive to Plaintiff's interrogatory. These documents did not contain Bates stamp numbers or any other method of identification, nor did they include the name of the client or account that generated the revenue.

By way of a second example of Defendants' deficient discovery answers, in response to Plaintiff's request for documents no. 12, which requested copies of all 2010 IRS Form 1099s received by James J. Nocerino, Defendants did not produce these documents and responded that the 1099s were with Mr. Nocerino's Certified Public Accountant. Despite the fact that Plaintiff's request had been made at the end of October 2011, Defendants had yet to produce these documents as of the end of December 2011, nearly two months later. (Doc. No. 30, pp. 2, 5.)

On January 9, 2012, at Plaintiff's request, we held a telephone conference regarding Defendants' deficient responses. The parties were then given a two-week period to attempt to reach a resolution. Having failed to do so, a hearing was held on January 24, 2012.

At the hearing, Defendants' counsel was unable to provide any explanation for Defendants' belated and inadequate responses other than they had not yet gathered the requested information. Accordingly, we entered an Order on January 30, 2012 that: (1) directed Defendants to fully and completely comply with Plaintiff's discovery requests on or before

February 3, 2012; (2) required Defendants to Bates-stamp their discovery responses and include an index or other document identifying which documents were responsive to each particular discovery request; and (3) sanctioned Defendants in the amount of $1000.00 to be paid on or before February 3, 2012. (See Doc. No. 33.)

On February 2, 2012, Defendants served their Second Supplemental Responses to Plaintiff's First Set of Interrogatories and Second Supplemental Responses to Plaintiff's First Set of Requests for Documents. Defendants Bates-stamped documents 1-1942 and included two indices.

On March 8, 2012, Plaintiff filed its first motion for sanctions asserting that Defendants' February 2, 2012 responses failed to comply with this Court's January 30, 2012 Order and were otherwise deficient. A hearing on Plaintiff's motion for sanctions was held on April 23, 2012, and there, upon review of Defendants' responses, we concluded that Defendants still had not fully complied with Plaintiff's discovery requests and were in violation of this Court's January 30, 2012 Order. For example, although Defendants' response included indices, such indices did not, contrary to the clear directive in our January 30, 2012 Order, identify which documents were responsive to each particular discovery request. (See Hr'g Tr., Apr. 23, 2012 at pp. 45-46.) Additionally, some of the commission statements requested by Plaintiff had still not been produced. Defendants' counsel, Mr. Vaughan, conceded as much and acknowledged that Mr. Nocerino could have obtained these statements by simply calling the companies that issued the statements, but that this did not occur because Plaintiff could just as easily have subpoenaed the companies for the same information. (Id. at pp. 37-38.) This position runs counter to

Defendants' obligations under Rule 34.[3]

Just prior to the hearing, Mr. Vaughan also provided Plaintiff with Defendants' responses to Plaintiff's Second Set of Interrogatories and Plaintiff's Third Set of Requests for Production of Documents. These responses were nearly one month delinquent and did not include certain documents indicated as being attached. Mr. Vaughan stated that he had just received the documents from his clients a few days prior, and conceded at the hearing that Defendants had still not submitted phone records that were requested in Plaintiff's First Set of Requests for Documents, which were at that point more than five months overdue. Mr. Vaughan's explanation was that he had requested the records from Mr. Nocerino, but that Mr. Nocerino had not yet produced them. (Id. at pp. 49-50, 55-56.)

In light of the above continuing discovery violations, on May 3, 2012, we issued yet another discovery Order directing that, on or before May 23, 2012, Defendants: (1) produce an amended index, providing specific information regarding revenue receipts; (2) request and produce all commission statements from the companies identified by Plaintiff and supply a copy of these requests to Plaintiff; (3) produce a list of customers that Defendants serviced from May 1, 2011 through the present; (4) produce the documents requested in request nos. 24 and 25 of Plaintiff's Second Request for Documents (given that Defendants' objections were overruled); (5) produce all phone records from any phone line owned by Defendants as requested in

---

[3] Under Rule 34(a), a party may request another party to produce documents within that party's "possession, custody, or control." Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441 (3d Cir. 1991). "Control" is construed broadly for Rule 34 purposes. See id. A party is deemed to have control where it "has the legal right or ability to obtain the documents from another source upon demand." Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 160 (3d Cir. 2004). "A party is not required to have physical possession of documents for control to be present." Haskins v. First American Title Ins. Co., 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012) (citing Camden Iron & Metal, Inc., 138 F.R.D. at 441).

Plaintiff's First Request for Documents; and (6) pay $5,000.00 in sanctions.

On May 15, 2012, Mr. Vaughan informed the Court that he intended to withdraw his representation of Defendants and that it was his understanding that Mr. Freeth would move for pro hac vice admission to this Court. Mr. Vaughan was advised to file a formal motion to withdraw as counsel.

On May 30, 2012, Plaintiff submitted correspondence renewing its March 8, 2012 motion for sanctions, which we construe as a second motion for sanctions. Plaintiff explained that Defendants had failed to obey this Court's May 3, 2012 Order in that they did not produce: an updated amended index regarding revenues received; any of the 2010 and 2011 commission statements requested; a list of customers serviced since May 1, 2011; all bank account and credit card statements (Plaintiff acknowledged that some bank statements were produced); or any phone records. Plaintiff also claims that Defendants violated the May 3, 2012 Order by failing to pay the $5,000.00 in sanctions. Plaintiff further argued that Defendants' responses to Plaintiff's Second Set of Interrogatories and Third Set of Requests for Production of Documents were unsigned, the responses to the interrogatories were not verified and the answers were non-responsive. Plaintiff sought an entry of default judgment and monetary sanctions, and requested that Defendants be held in contempt.

On June 12, 2012, Mr. Vaughan filed a motion to withdraw as counsel for Defendants. A hearing on Plaintiff's second motion for sanctions and Mr. Vaughan's motion to withdraw was held on September 5, 2012. Mr. Vaughan, Mr. Freeth and Mr. Nocerino were all present. Despite the fact that no pro hac vice motion had been filed, Mr. Freeth spoke on behalf of Defendants and represented that he assisted Mr. Nocerino in preparing the discovery responses

submitted to Plaintiff on May 23, 2012. (Mot. Hr'g Tr. Sept. 5, 2012 at p. 20.) Nonetheless, Mr. Freeth was unprepared to discuss the discovery violations asserted in Plaintiff's second motion for sanctions, nor was he prepared to demonstrate Defendants' compliance with our May 3, 2012 Order. Mr. Freeth conceded that Defendants did not comply with ¶ 1 of this Court's May 3, 2012 Order regarding revenues generated by Nocerino. With respect to production of the commission statements at issue in ¶ 2 of that Order, Mr. Freeth stated that he provided documents that were in Mr. Nocerino's possession to Plaintiff's counsel electronically, but that his computer had the "electronic copy with the Bates numbers on them" and he "[did] not have those files here today." Besides being unable to submit proof that he submitted any documents to Plaintiff, Mr. Freeth did not explain why he failed to produce the commission statements listed by Plaintiff that were <u>not</u> in Mr. Nocerino's possession as previously ordered. Further, Mr. Freeth could not recall whether Defendants produced a list of customers as required by ¶ 3 of our May 3, 2012 Order. (Id. at pp. 15, 17-19.)

In addition, with respect to ¶ 4 of our May 3, 2012 Order, Plaintiff's counsel represented that only some, but not all, bank statements were produced, and that no credit card statements were produced. Mr. Freeth could not provide any evidence or explanation as to why this information had also not been produced. Regarding ¶ 5 or our Order, Mr. Freeth stated that he felt that the phone records were produced, and that he "believed, at the time, that we gave everything that Mr. Nocerino had [and that if] he didn't have it we couldn't produce it." Again, Mr. Freeth was unable to provide any confirmation either by way of confirming correspondence or copies of documents produced which would have established that the phone records were submitted to Plaintiff. Mr. Freeth also failed to explain how Mr. Nocerino's phone records

7

would not be in his control such that he was not obligated to produce them. In explaining why Defendants failed to pay the $5,000.00 sanction, Mr. Freeth stated that he "assumed local counsel would take care of it" and that "Mr. Nocerino advises that he did not know about the deadline." Mr. Vaughan stated that Mr. Nocerino was aware of the sanctions because he had conveyed that information to him by phone, e-mail and letter. Mr. Freeth did not attempt to rebut Mr. Vaughan's representation. (Id. at pp. 20-22.) At the conclusion of the hearing, we granted Mr. Vaughan's motion to withdraw and held Plaintiff's second motion for sanctions under advisement.

Given that Mr. Freeth was not admitted to practice before this Court, and in light of his lack of preparation at the September 5, 2012 hearing, we issued an Order on September 13, 2012 that: (1) required either that an admitted attorney enter his appearance for Defendants or that Mr. Freeth file an application for pro hac vice admission by October 12, 2012; and (2) permitted Defendants to file a response to Plaintiff's May 30, 2012 sanctions correspondence by the same date. (See Doc. No. 55.)

Defendants did not comply with ¶ 1 of this Court's September 13, 2012 Order, in that neither a new attorney entered an appearance nor did Mr. Freeth submit a pro hac vice motion. Further, Defendants at no time petitioned the Court for an extension to obtain counsel.

On October 12, 2012, Mr. Nocerino filed a response in opposition to Plaintiff's second motion for sanctions on behalf of himself and Defendant Horizon Financial Network, LLC.[4] (See Doc. No. 56.) Mr. Nocerino attempted to place all blame for the lack of compliance with

---

[4] We note that Mr. Nocerino cannot file this document on behalf of Horizon Financial Network because a limited liability company can only be represented by licensed counsel. See Dougherty v. Snyder, 469 Fed. Appx. 71, 72 (3d Cir. 2012).

this Court's orders on his former counsel, Mr. Vaughan. Nocerino repeatedly stated that he provided everything in his possession to Mr. Vaughan and that he did not act in bad faith, but rather relied on Mr. Vaughan to protect his interests. In an effort to show his good faith, Mr. Nocerino attached a CD to his submission "containing all documents which [he] had previously turned over to [Mr.] Vaughan, but for a small portion of files." (Defs.' Resp. at p. 5.) Mr. Nocerino alleged that a sanction of default judgment was not warranted because there was no undue prejudice as a trial date had not been set, the documents in question had not been destroyed and all of the requested documents could be obtained by subpoena. Mr. Nocerino also asserted that Plaintiff was the first to breach the contract, which, he inferentially argued, relieved him of his duties under the contract. We note that this response was completely devoid of discussion or even reference to Defendants' specific compliance with this Court's May 3, 2012 Order.

On October 29, 2012, Plaintiff filed a motion to strike Mr. Nocerino's response in opposition and a motion for leave to file a reply. (Doc. Nos. 57-58, 59.) Among other things, Plaintiff's motion to strike requested that we strike Defendants' response in opposition to Plaintiff's second motion for sanctions as to Defendant Horizon Financial Network, LLC. At a minimum, Plaintiff requested that, even if we did not strike Defendants' response, we treat Plaintiff's allegations regarding Defendants' failure to obey our May 3, 2012 Order as unopposed and admitted. (See Doc. No. 58 at pp. 5, 6.)

Plaintiff also urged that we should reject Mr. Nocerino's argument that Mr. Vaughan was responsible for Defendants' discovery misconduct. Plaintiff noted that Mr. Vaughan cannot be blamed for the noncompliance with this Court's May 3, 2012 Order as Mr. Freeth represented

9

that he prepared the responses required by that Order. Further, Plaintiff asserted that Defendants have not presented any evidence of Mr. Vaughan's alleged responsibility regarding the discovery deficiencies. Moreover, Plaintiff contends that the evidence actually demonstrates that Defendants are personally responsible for the discovery misconduct and that it has been willful and in bad faith. Among other things, Plaintiff points out that Defendants refused to pay the $5,000.00 sanction and violated this Court's September 13, 2012 Order in failing to retain counsel.

On November 7, 2012, Mr. Freeth submitted a letter to this Court regarding the representation of Defendants. Mr. Freeth indicated that he had assisted Defendants with contacting several attorneys to no avail, and that he felt "compelled" to appear in the case. However, Mr. Freeth stated that he could not find anyone to sponsor his pro hac vice admission and requested that the Court waive that requirement.

## III. LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure provides for a wide range of sanctions for a party's non-compliance with its discovery obligations, including discretion to deem facts as established, bar evidence, dismiss the action, enter default judgment against the disobedient party and order payment of reasonable expenses. See FED. R. CIV. P. 37(c)(1), 37(b)(2)(A). The court has broad discretion in selecting the type and degree of sanction appropriate under the facts and circumstances. Bowers v. NCAA, 475 F.3d 524, 538 (3d Cir. 2007).

Where a party requests default judgment as a sanction, the court must balance six factors to determine whether such penalty is warranted: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders

and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claims or defenses. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868-70 (3d Cir. 1984). Although each factor need not be satisfied for the court to enter a default judgment, any and all doubts should be resolved in favor of disposing of the claims on the merits. Wirerope Works, Inc. v. Travelers Excess & Surplus Lines Co., 2008 WL 2073375, at *3 (E.D. Pa. May 12, 2008) (citing Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003)).

## IV. DISCUSSION

The essence of the dispute in this case centers around commissions received by Nocerino which Plaintiff claims Nocerino was obligated to turn over to Plaintiff pursuant to the asset purchase agreement. Plaintiff's discovery requests were directed at this issue through discovery of Nocerino's commission statements, customer list and revenue receipts. Based on the record before us, we find that Defendants' overall responses have been consistently deficient. More specifically, Defendants' May 23, 2012 responses are in violation of this Court's May 3, 2012 Order. Defendants conceded that they did not comply with ¶ 1 of this Order and, despite two opportunities to demonstrate their compliance (the hearing and the opportunity to file a response in opposition), Defendants have still not provided any evidence to show that they have produced the documents required by ¶¶ 2-4 of our Order. Indeed, despite Mr. Freeth's representation at the September 5, 2012 hearing that he helped to prepare the discovery responses and maintained electronic records demonstrating that Defendants produced the discovery at issue, Mr. Nocerino's response in opposition to Plaintiff's request for sanctions did not attach any reference

11

to discovery responses or even mention such compliance.  Surely, Mr. Nocerino would have access to that information, especially given that he expressly stated that Mr. Freeth helped him to prepare the response.  (See Doc. No. 56 at p. 2.)  The only attempt Mr. Nocerino has made to demonstrate his good faith was to attach a CD with documents that he allegedly submitted to Mr. Vaughan, but with no explanation as to how these documents were responsive to Plaintiff's requests or were in full compliance with this Court's May 3, 2012 Order.

Further, Defendants have presented no confirmation, even after the September 5, 2012 hearing, which undoubtedly made Mr. Nocerino aware of his obligation, that they have paid the second monetary sanction imposed.  Given these discovery violations, as well as the previous violations, we must now assess the appropriate sanction to impose on Defendants.  In doing so, we analyze the six factors set forth in Poulis.  In evaluating these factors, we conclude that the facts support entry of default judgment against Defendants.

**A.  Nocerino's Personal Responsibility**

Even if Mr. Vaughan had some responsibility for the misconduct that occurred prior to May 23, 2012, as Mr. Nocerino claims, Mr. Nocerino at least shared in this responsibility.  For example, Mr. Vaughan represented at the April 23, 2012 hearing that Defendants had not yet produced phone records despite Mr. Vaughan's request for that information.  No phone records were included on the CD submitted by Mr. Nocerino—which Mr. Nocerino represented "contain[ed] all documents which [he] had previously turned over to [Mr.] Vaughan, but for a small portion of files" which with Plaintiff has taken no issue.  This scenario is but one example where Mr. Nocerino was personally responsible for the failure to produce such records.

Further, Defendants' noncompliance with this Court's May 3, 2012 Order can only rest

with Mr. Nocerino or Mr. Freeth, who prepared the responses, not with Mr. Vaughan as Plaintiff asserts. Moreover, Defendants' failure to establish that they had paid the $5,000.00 sanction after the September 5, 2012 hearing, which unmistakably put Mr. Nocerino on notice of the discovery violations, also reflects a personal decision to defy court Orders squarely on Mr. Nocerino. Mr. Nocerino's continued failure to retain counsel who is admitted to practice in this Court is also in violation of this Court's September 13, 2012 Order and reflective of Mr. Nocerino's personal responsibility.

### B. Prejudice to Plaintiff

The second factor, prejudice to the adversary, also weighs in favor of entering a default judgment. We initially note that this factor does not require a showing of "irreparable harm." Poulis, 747 F.2d at 868. Examples of prejudice include conduct "that hinder[s] a party's ability to conduct discovery, develop the factual record, and reach a speedy and fair resolution to the litigation," Smith ex. Rel. El Ali v. Altegra Credit Co., 2004 WL 2399773, at *5 (E.D. Pa. Sept. 22, 2004), as well as the costs associated with obtaining court orders to force compliance with discovery. Adams v. Trs. of the N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994). Evidence of prejudice to an adversary bears "substantial weight in support of a dismissal or default judgment." Id. (citing Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984).

Here, as a result of Defendants' discovery misconduct, Plaintiff has been unable to obtain even the most basic discovery it requires to effectively prepare for trial. In addition, Plaintiff has expended significant time and money filing letters and motions in response to Defendants' noncompliance, and preparing for and attending multiple hearings to obtain information that is

clearly discoverable. Defendants' misconduct has caused the discovery and prosecution of this case to be significantly delayed. Therefore, this factor weighs heavily in favor of granting default judgment.

### C. History of Dilatoriness

Defendants' conduct also demonstrates a pattern and history of dilatoriness. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Id. at 874. As previously discussed, some of the discovery requests that Defendants still have not complied with have been outstanding since October 28, 2011. Defendants were also given multiple opportunities to satisfy their discovery obligations, but failed to do so despite this Court's clear and unambiguous Orders. Thus, this factor also weighs in Plaintiff's favor.

### D. Willfulness or Bad Faith

In evaluating the fourth Poulis factor, we must assess whether Defendants' conduct is willful or in bad faith. Willfulness and bad faith "involve[] intentional or self-serving behavior." Id. at 875. Here, many of Defendants' discovery responses reflect that Defendants acted in bad faith. For example, interrogatory no. 2 requested that Defendants identify and list all revenue earned from the sale of financial products or the rendering of financial services that was received by Defendants and not paid over to Plaintiff between January 15, 2010 and May 1, 2011. This request included identifying the name of the client, the account and/or policy that generated the revenue, the name of the person or company that paid the revenue and the date received and the amount. Defendants' initial response was that they endorsed over all checks except for the "one time this did not occur." Notably, Defendants did not identify the "one time" or provide any

14

details on this occurrence. Subsequently, in its first supplemental response, Defendants stated that they would make available at Mr. Nocerino's office Defendants' files and records for inspection and photocopying by Plaintiff. This "response" is anything but that and at the April 23, 2012 hearing, we held that both of these answers were deficient. (See Oral Arg. Tr., Apr. 23, 2012 at pp. 11-12.)

Even if Defendants did not act in bad faith, their consistent failure to produce requested documents and obey this Court's orders, at the very least, render their actions willful for purposes of the fourth Poulis factor. See Martino v. Solaris Health Sys. Corp., 2007 WL 1959226, at *5 (D.N.J. June 29, 2007). Mr. Nocerino's willfulness and disregard for this Court's orders was further reflected in his noncompliance with our September 13, 2012 Order, which required that either a new attorney enter an appearance on Mr. Nocerino's behalf, or that Mr. Freeth file an application for pro hac vice admission.

### E. Alternative Sanctions

With respect to the effectiveness of alternative sanctions, we find that entry of default judgment is the only appropriate means of redressing Defendants' willful disregard for this Court's orders and the discovery process. We have issued three separate orders regarding the production of the same materials and have imposed two monetary sanctions, one of which Defendant refuses to honor. To provide Defendants with yet another chance would reward them for their contempt and encourage others to defy this Court's orders. Thus, we will enter default judgment in favor of Plaintiff.

### F. Meritoriousness of Defense

We further find that the meritoriousness of Defendants' defenses is unclear. In looking to

Defendants' answer, we note that they essentially only deny the allegations and raise boilerplate affirmative defenses. We are not required to consider the merit of the Defendants' affirmative defenses or to balance the merit of defenses against the merit of the Plaintiff's claims. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 922 (3d Cir. 1992). While Defendants' persistent refusal to produce the documents requested places the meritoriousness of their defenses in serious doubt, we nevertheless find that this factor is neutral.

## V.     CONCLUSION

For the reasons set forth above, Plaintiff's second motion for sanctions will be granted such that judgment will be entered in Plaintiff's favor. Our Order follows.